IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
TULSA DIVISION

**F I L E D**

MAY 0 5 2003

Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| CHRISTIAN J. WOOD, | § |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § CIVIL ACTION NO. |
| CENDANT CORPORATION | § |
| and AVIS GROUP HOLDINGS, INC., | § |
| | § |
| Defendants. | § |

**03CV298. K (M)**

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Christian J. Wood, by counsel, hereby complains of Defendants Cendant Corporation ("Cendant") and Avis Group Holdings, Inc. ("Avis") and alleges as follows:

### PARTIES

1.      Christian J. Wood is an individual who resides in Broken Arrow, Wagoner County, Oklahoma.

2.      Cendant Corporation is a Delaware corporation and has its principal place of business at 9 W. 57th St., New York, New York 10019.

3.      Avis Group Holdings, Inc. is a Delaware corporation and has its principal place of business at 6 Sylvan Way, Parsippany, New Jersey 07054.

### JURISDICTION AND VENUE

4.      This is a copyright infringement action presented to the Court for decision under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

5.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a).  Venue is proper under 28 U.S.C. § 1391.

6.     This Court has personal jurisdiction over the Defendants by virtue of their transacting, doing, and soliciting business in this District, and because a substantial part of the relevant events and copyright infringement occurred and are occurring in this District.

## FACTS GIVING RISE TO THE CAUSE OF ACTION

7.     Plaintiff, Christian J. Wood, has extensive experience in spreadsheet modeling and forecasting.

8.     In mid-July 1996, while between employers, plaintiff created a spreadsheet model called *StafPlan*. *StafPlan* is a forecasting and budgeting model.

9.     On July 29, 1996, plaintiff began his employment with Avis as a manager of Avis' operations control department in Tulsa, Oklahoma.   At that time, he executed an Avis document entitled "Assignment of Ideas and Inventions," in which he specifically excluded the *StafPlan* and *Training Run* software that he had developed prior to his employment with Avis. See Exhibit 1.

10.     During his employment at Avis, plaintiff was responsible for all forecasting, scheduling and call-routing activities for Avis' reservation centers.   From July 1996 through 1998, Avis used forecasting software called *Staff LT*.

11.     HFS, Inc. acquired Avis' call center operations in October 1996.[1]   In July 1997, plaintiff met his counterpart at HFS, Randy Buckwalter, and discussed staff planning.   At that time, HFS was using forecasting software called *People Report*, and Avis was still using *Staff LT*.   Neither program was sufficient for use in all Cendant-related divisions, therefore, HFS was looking to acquire software that could be so implemented.

---

[1] Avis was purchased by HFS, Inc. in October 1996.  HFS kept the call center operations and brand name and sold the rest of the company.  In December 1998, HFS merged with CUC International to form Cendant Corporation.  In 2001, Cendant purchased all of the outstanding shares of Avis Group Holdings, Inc. resulting in Avis becoming a wholly-owned subsidiary of Cendant Corporation.  Cendant acquired assets of Budget Group, Inc. in November 2002.

2

12.     In 1998, plaintiff assisted Randy Buckwalter in trying to locate a replacement staffing model, but they were unable to locate a suitable product.

13.     Plaintiff then began testing his *StafPlan* spreadsheet software as a potential model, and, in November 1998, informed Buckwalter that the staffing model plaintiff had created prior to his employment with Avis might suit the company's needs.

14.     From January to March 1999, plaintiff began modifications of *StafPlan* and named his derivative modified software program *Christal Ball*. From May 1999 to August 2000, Cendant implemented *Christal Ball* in various Cendant subsidiaries, including (1) Avis, in Tulsa, Oklahoma (2) RCI, (3) Cendant Alliance Marketing, and (4) Cendant's hotel division. Defendant has since installed the software at its subsidiary, Budget, in Tulsa, Oklahoma.

15.     Cendant knew that plaintiff's *Christal Ball* software was a derivative of *StafPlan*, for which he had proprietary rights. Plaintiff allowed Cendant to use the software during his employment.

16.     On September 13, 2002, plaintiff was terminated from Avis. He was, however, offered a three month probationary employment period if he disclosed the hidden formulas and passwords to the *Christal Ball* software. Since plaintiff created the core software for *Christal Ball* prior to his employment with Avis, he did not wish to disclose this information and declined the offer.

17.     Cendant also offered plaintiff a severance package in the amount of approximately $46,000, conditioned upon plaintiff's executing an agreement that would have relinquished his rights to his software. See Exhibit 2. When plaintiff refused to sign the severance agreement, defendant failed to pay plaintiff any severance pay, including unused

vacation pay and two weeks severance pay for each year of service that the company typically provided to managers. See Exhibit 3.

18.     In October 2002, counsel for plaintiff, Ray Norton, sent a letter to Cendant instructing Cendant to cease and desist use of *Christal Ball*. See Exhibit 4.

19.     Plaintiff timely filed his copyright registration with the U.S. Copyright Office for the *StafPlan* software. See Exhibit 5.

20.     Defendants have unlawfully used the *Christal Ball* software, which infringes on plaintiff's copyright for the *StafPlan* software, and, upon information and belief, are still infringing plaintiff's copyrights.

**COUNT ONE**
**CLAIM FOR COPYRIGHT INFRINGEMENT**

21.     Plaintiff herein incorporates each averment contained in Paragraphs 1 through 20 above.

22.     Plaintiff has complied in all respects with 17 U.S.C. §§ 101, *et seq.*, and secured the exclusive rights and privileges in and to the copyright of the *StafPlan* software. Plaintiff has been and still is the sole proprietor of all rights, title, and interest in and to the copyright in his respective work as referenced above.

23.     Defendants' conduct violates the exclusive rights belonging to plaintiff as owner of the copyright of the *StafPlan* software, including, without limitation plaintiff's rights under 17 U.S.C. § 106.

24.     On information and belief, plaintiff alleges that, as a direct and proximate result of defendants' wrongful conduct, defendants have realized and continue to realize profits and benefits rightfully belonging to plaintiff. Accordingly, plaintiff seeks an award of damages, including statutory damages, pursuant to 17 U.S.C. §§ 504 and 505.

4

25.     Plaintiff states that he is entitled to receive his costs and attorney fees in this case pursuant to 17 U.S.C. § 505.

## COUNT TWO
## CONVERSION

26.     Plaintiff herein incorporates each averment contained in Paragraphs 1 through 20 above.

27.     Defendants' use of plaintiff's software since the date of his termination was unauthorized. Defendants misappropriated plaintiff's software for their own use and benefit and plaintiff is entitled to damages for their conversion of his software.

## COUNT THREE
## REQUEST FOR PERMANENT INJUNCTIVE RELIEF

28.     Plaintiff herein incorporates each averment contained in Paragraphs 1 through 20 above.

29.     By reason of the defendants' conduct, as more fully set forth above, plaintiff is suffering, and continues to suffer, incalculable financial loss and great and irreparable injuries to its business and property for which it has no adequate remedy at law.

30.     The actions of defendants are without legal right or justification and, if defendants are not immediately restrained from doing so, defendants will continue their conduct in infringing plaintiff's copyright and using his software for the benefit of defendants and to the detriment of plaintiff. Pursuant to 17 U.S.C. § 502, plaintiff is entitled to injunctive relief against defendants.

## JURY DEMAND

Plaintiff demands trial by jury for all claims so triable.

**WHEREFORE**, plaintiff respectfully prays that this Court grant judgment against defendant as follows:

5

A.      Declaring that Defendants' unauthorized conduct violates plaintiffs' rights under common law and the Federal Copyright Act;

B.      Permanently enjoining defendants, their officers, directors, agents, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them from copying and/or using any of plaintiff's copyrighted software without plaintiff's consent or otherwise infringing plaintiff's copyright or other rights in any manner;

C.      Ordering defendants to account to plaintiff for all gains, profits, and advantages derived by defendant by its infringement of plaintiff's copyrights or such damages as are proper, and since defendant intentionally infringed plaintiff's copyrights, for the maximum allowable statutory damages for each violation;

D.      Awarding plaintiff actual and/or statutory damages in an amount to be determined at trial;

E.      Awarding plaintiff his costs, reasonable attorneys' fees, and disbursements in this action, pursuant to 17 U.S.C. § 505; and

F.      Awarding plaintiff such other and further relief as the Court shall determine to be just and proper.

Respectfully submitted,

Raymond D. Norton
OK Bar No. 013519
HEAD, JOHNSON & KACHIGIAN
228 West 17th Place
Tulsa, Oklahoma 74119
(918) 587-2000
(918) 584-1718 (Fax)

Sanford E. Warren, Jr.
TX Bar No. 20888690
Stephen A. Kennedy
TX Bar No. 11300425
John Russell Holloway
TX Bar No. 24025433
Cassandra L. Johnson
TX Bar No. 00792605
WARREN & KENNEDY, LLP
6565 N. MacArthur Blvd., Suite 910
Irving, Texas 75039
(469) 916-5300
(972) 506-9827 (Fax)
ATTORNEYS FOR PLAINTIFF

# AVIS.

## ASSIGNMENT OF IDEAS AND INVENTIONS

In consideration of my employment by Avis, Inc or its subsidiaries ("Avis"), I agree that:

1.   Any inventions, discoveries, improvements, devices, tools, machines, designs, promotional ideas, practices, processes, services or products ("Inventions") related to Avis' business, produced with the use of Avis' time, materials or facilities or resulting from or suggested by my work for Avis, whether patentable, copyrightable or otherwise, which I make, discover, conceive, develop, or secure, alone or with others, during my employment with Avis will be disclosed promptly and fully to Avis, are hereby assigned to Avis and shall become Avis' property as soon as made or conceived.

2.   At any time and from time to time upon Avis' request, either during my employment or after the termination thereof, and without charge to Avis, but at its expense, I agree to execute all such instruments and to perform such further acts which Avis may deem desirable in order to (a) effectuate the assignment referred to above; and (b) obtain the Inventions for Avis' benefit including any patent, copyright, trademark or service mark application and all continuations, renewals or reissuances thereof. My obligation to assign the rights to all inventions shall survive the termination of my employment for any reason.

3.   If, prior to the date of execution of this Agreement, I have made or conceived any Inventions which I desire to have excluded from this Agreement, I have written in the space below a complete list thereof.

4.   I will maintain adequate and complete written records of all Inventions, which records shall be and remain Avis' property and available to Avis at all times.

5.   I have not been promised nor shall I claim any additional or special payment for the development of any Inventions or the assignment thereof to Avis or for compliance with my undertaking set forth above.

6.   I have read and understand the above condition of my employment.

## INVENTIONS EXCLUDED FROM AGREEMENT

*Training cum & Staffplanning Budget Spreadsheets*

---

(If none - write "None" and initial)

---

IN WITNESS WHEREOF, I have hereunto set my hand this _7/23_ day of ____, 19 _96_.

*Christian J Wood*

Employee Signature

*Christian J. Wood*

(Name Printed)

SEE REVERSE SIDE

**EXHIBIT 1**

## CONFIDENTIALITY AGREEMENT

In consideration of my employment by Avis, Inc. or one of its subsidiaries ("Avis"), I agree that:

1. While I am employed by Avis and thereafter, I will not disclose any confidential or proprietary information concerning the property, operations, employees and business affairs of Avis to (a) any person outside Avis, or (b) any persons employed by Avis not required to have knowledge of such information in connection with the performance of such person's duties.

2. All records, reports, notes, compilations, computer runs, programs, and other recorded matter and copies of such material which is of a confidential or proprietary nature relating to Avis property, operations, employees and business affairs (the "Documents") which I receive or produce during my employment are the property of Avis exclusively. I will treat the Documents as confidential and within Avis' custody and control. Upon termination of my employment (or sooner if requested by Avis), I will surrender the Documents to Avis and will retain no copies thereof. In the event that I locate additional Documents after I have been requested to return the Documents, I shall keep such Documents confidential, shall not permit the Documents to be duplicated or inspected and shall return the original and all copies thereof to Avis at once.

3. Avis' computers must be used only for official Avis work. I understand that my right, if any, to use Avis' computers will cease when I leave Avis, for whatever reason.

I understand that my failure to comply with this Agreement and with Avis' policies may be cause for disciplinary or civil or criminal actions to be initiated against me.

IN WITNESS WHEREOF, I have signed this agreement this _____ day of 7/29, 19 96.

_Christian J. Wood_
Employee's Signature

_Christian J. Wood_
(Print Name)

**Employees with access to Avis computer programs and computerized data:**

I understand receipt of a copy of Avis Security Guidelines for Data Processing which I will study and comply with.

_Christian J. Wood_
Employee Signature

_Christian J. Wood_
(Print Name)

SEE REVERSE SIDE

## AGREEMENT AND GENERAL RELEASE

Cendant Corporation (the "Cendant" and "Company"), and EMPLOYEE identified on the Personal Statement of Termination Benefits ("Personal Statement") attached hereto and made a part hereof (hereinafter collectively with his/her heirs, executors, administrators, successors and assigns, "EMPLOYEE"), mutually desire to enter into this Agreement and General Release and agree that:

The terms of this Agreement and General Release are the products of mutual negotiation and compromise between EMPLOYEE and the Company; and

The meaning, effect and terms of this Agreement and General Release have been fully explained to EMPLOYEE; and

EMPLOYEE is hereby advised, in writing, by the Company that he/she should consult with an attorney prior to executing this Agreement and General Release; and

EMPLOYEE is being afforded at least twenty-one (21) days to consider the meaning and effect of this Agreement and General Release.

EMPLOYEE understands that he/she may revoke this Agreement and General Release for a period of seven (7) calendar days following the day he/she executes this Agreement and General Release and said Agreement and General Release shall not become effective or enforceable until the revocation period has expired, and no revocation has occurred. Therefore, the Effective Date of this Agreement and General Release shall be the eighth calendar day following EMPLOYEE's execution of this document. Any revocation within this period must be submitted, in writing, to Christy Hays, Human Resources, and state, "I hereby revoke my acceptance of your Agreement and General Release." Said revocation must be personally delivered to Christy Hays, or mailed to him/her at the Company and be postmarked within seven (7) calendar days of execution of this Agreement and General Release; and

EMPLOYEE has carefully considered other alternatives to executing this Agreement and General Release.

THEREFORE, EMPLOYEE and the Company, for the full and sufficient consideration set forth below, agree as follows:

1.      EMPLOYEE agrees to remain employed in good standing through the Last Day of Employment set forth on the Personal Statement. In addition to all compensation earned through the Last Day of Work, EMPLOYEE shall be paid for all accrued and unused vacation as of that date.

2.      In consideration for the execution by EMPLOYEE of this Agreement and General Release and compliance with the promises made herein, the Company agrees:

   a.      to pay EMPLOYEE severance in the amount set forth on the Personal Statement, subject to applicable taxes, withholding, and deductions.

**EXHIBIT 2**

EMPLOYEE Agreement and Release
July, 2002
Page 2 of 7

    b.    to provide EMPLOYEE with a neutral reference.  Upon inquiry to the Human Resources department, prospective employers will be advised only as to the dates of EMPLOYEE's employment and his/her most recent job title.  Last salary will be provided if EMPLOYEE has provided a written release for the same.

The payment herein will be made in the manner set forth on the Personal Statement.

3.    EMPLOYEE understands and agrees that he/she would not receive the monies and/or benefits specified in Paragraph 2 above, except for his/her execution of this Agreement and General Release, and the fulfillment of the promises contained herein, and that such consideration is greater than any amount to which he/she would otherwise be entitled.

4.    EMPLOYEE, of his/her own free will knowingly and voluntarily releases and forever discharges the Company, its parents, affiliates, subsidiaries, divisions, successors and assigns and the employees, officers, directors and agents thereof (collectively referred to throughout this Agreement as the "Released Parties") of and from any and all actions or causes of action, suits, claims, charges, complaints, promises demands and contracts (whether oral or written, express or implied from any source), or any nature whatsoever, known or unknown, suspected or unsuspected, which against the Release Parties EMPLOYEE or EMPLOYEE'S heirs, executors, administrators, successors or assigns ever had, now have or hereafter can shall or may have be reason of any matter, cause or thing whatsoever arising from the beginning of time to the time EMPLOYEE executes this Agreement and General Release, including, but not limited to:

    i.    any and all matters arising out of his/her employment by the Company (or any of the Released Parties) and the cessation of said employment, and including, but not limited to, any claims for salary, bonuses, severance pay, or vacation pay, any alleged violation of the National Labor Relations Act, any claims for discrimination of any kind under the Age Discrimination in Employment Act of 1967 as amended by the Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964, Sections 1981 through 1988 of Title 42 of the United States Code, the Employee Retirement Income Security Act of 1974 (except for vested benefits which are not affected by this agreement), the Americans With Disabilities Act of 1990, the Fair Labor Standards Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Federal Family and Medical Leave Act, and the Worker Adjustment and Retraining Notification Act;

    ii.    the Oklahoma Equal Pay Law; Anti-Discrimination Act; Occupational Safety and Health Laws; Smokers' Rights Law; Workplace Drug and Alcohol Testing Act; Protection of Labor Act; Oklahoma Wage and Hour Laws; "Workers' Compensation: Retaliation" provision;  "Jury Duty" provision;  "Voting Leave" provision; "Arrest Records" provision; "Access

EMPLOYEE Agreement and Release
July, 2002
Page 3 of 7

to Medical Records" provision; "Restrictive Covenant" provision; "Smoking Outside the Workplace" provision; "Blacklisting of Employees" provision; "Military Service Leave" provision;

iii.    any other federal, state or local civil or human rights law, or any other alleged violation of any local, state or federal law, regulation or ordinance, and/or public policy, implied or expressed contract, fraud, negligence, estoppel, defamation, infliction of emotional distress or other tort or common-law claim having any bearing whatsoever on the terms and conditions and/or cessation of his/her employment with the Company including, but not limited to, any allegations for costs, fees, or other expenses, including reasonable attorneys' fees, incurred in these matters.

5.    EMPLOYEE also acknowledges that he/she does not have any current charge, complaint, grievance or other proceeding against the Released Parties pending before any local, state or federal agency regarding his/her employment.

6.    EMPLOYEE shall not seek or be entitled to any personal recovery, in any action or proceeding that may be commenced on EMPLOYEE'S behalf in any way arising out of or relating to the matters released under this Agreement and General Release.

7.    EMPLOYEE agrees not to disclose, either directly or indirectly, any information whatsoever regarding the existence or substance of this Agreement and General Release including specifically any of the terms of settlement. This nondisclosure includes, but is not limited to, members of the media, present and former employees of the Company (or any Released Party), and other members of the public, but does not include an attorney, accountant or representative with whom EMPLOYEE chooses to consult or seek advice regarding his/her consideration of and decision to execute this Agreement and General Release. This Agreement shall not be admissible in any proceeding except to enforce the terms herein. In response to inquiries from individuals other than an attorney, accountant, or representative, EMPLOYEE shall only respond, "I have satisfactorily resolved all of my differences with the Company." In the event of disclosure, except pursuant to lawful court order or subpoena, the Company has the right to institute an action against EMPLOYEE for the return of all settlement monies plus the reimbursement of attorney's fees and court costs.

8.    EMPLOYEE represents that he/she has not and agrees that he/she will not in any way disparage the Company or any Released Party, their current and former officers, directors and employees, or make or solicit any comments, statements, or the like to the media or to others that may be considered to be derogatory or detrimental to the good name or business reputation of any of the aforementioned parties or entities.

9.    EMPLOYEE acknowledges that in connection with his/her employment, EMPLOYEE has had access to information of a nature not generally disclosed to the public. EMPLOYEE agrees to keep confidential and not disclose to anyone, unless legally compelled to

EMPLOYEE Agreement and Release
July, 2002
Page 4 of 7

do so, Confidential and Proprietary Information. "Confidential and Proprietary Information" includes but is not limited to all Company or any Released Party's business and strategic plans, financial details, computer programs to include Christal Ball, manuals, contracts, current and prospective client and supplier lists, and all other documentation, business knowledge, data, material, property and supplier lists, and developments owned, possessed or controlled by the Released Party, regardless of whether possessed or developed by EMPLOYEE in the course of his/her employment. Such confidential information may or may not be designated as confidential or proprietary and may be oral, written or electronic media. EMPLOYEE understands that such confidential and proprietary information is owned and shall continue to be owned solely by the Released Parties. EMPLOYEE agrees that he/she has not and will not disclose, directly or indirectly, in whole or in part, any of the Confidential and Proprietary information. EMPLOYEE acknowledges that he/she has complied and will continue to comply with this commitment, both as an employee and after the termination of his/her employment. EMPLOYEE also acknowledges his/her continuing obligations under the Company Business Ethics Policy.

10.    EMPLOYEE acknowledges and confirms that he/she has returned all company property to the Company, including his/her identification card, any computer hardware and software, all paper or computer-based files, business documents, and/or other records as well as all copies thereof, credit cards, keys and any other Company supplies or equipment in his/her possession. In addition, any business related expenses for which he/she seeks reimbursement have been documented and submitted to the Company. Finally, any amounts owed to the Company have been paid.

11.    EMPLOYEE understands and agrees that in the event he/she should become reemployed with any Released Party at any time following the effective date of this Release, he/she may, in the sole discretion of the Company, be required to return to the Company that portion of the severance amount which is in excess of (a) one week's salary; plus (b) the product of his/her weekly salary and the number of weeks which have passed since the termination of his/her employment with the Company. In such event, unless otherwise specified in the Company's benefit plans, EMPLOYEE shall be restored to such length of service credits as he/she had prior to his/her initial separation.

12.    This Agreement and General Release shall be interpreted under the laws of the State of Oklahoma. Its language shall be construed as a whole, according to its fair meaning, and not strictly for or against either party. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, including the general release language, such provision shall immediately become null and void, leaving the remainder of this in full force and effect. However, if as a result of any action initiated by EMPLOYEE, any portion of the general release language were ruled to be unenforceable for any reason, EMPLOYEE shall return the consideration paid hereunder to the Company.

13.    EMPLOYEE agrees that neither this Agreement and General Release nor the furnishing of the consideration for this Release shall be deemed or construed at any time for any

Cendant Group Release 2002

EMPLOYEE Agreement and Release
July, 2002
Page 5 of 7

purpose as an admission by the Company of any liability or unlawful conduct of any kind, which the Company denies.

14.     This Release may not be modified, altered or changed except upon express written consent of both parties wherein specific reference is made to this Agreement and General Release.

15.     This Release sets forth the entire agreement between the parties hereto, and fully supersedes any prior agreements or understandings between the parties, with the exception of any non-compete, non-solicit or confidentiality agreement between EMPLOYEE and the Company, which agreement shall survive the termination of EMPLOYEE's employment in accordance with its own terms.

THE PARTIES HAVE READ AND FULLY CONSIDERED THIS AGREEMENT AND GENERAL RELEASE AND ARE MUTUALLY DESIROUS OF ENTERING INTO SUCH AGREEMENT AND GENERAL RELEASE.    EMPLOYEE UNDERSTANDS THAT THIS DOCUMENT SETTLES, BARS AND WAIVES ANY AND ALL CLAIMS HE/SHE HAD OR MIGHT HAVE AGAINST THE COMPANY; AND HE/SHE ACKNOWLEDGES THAT HE/SHE IS NOT RELYING ON ANY OTHER REPRESENTATIONS, WRITTEN OR ORAL, NOT SET FORTH IN THIS DOCUMENT.  HAVING ELECTED TO EXECUTE THIS AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SUMS AND BENEFITS SET FORTH ABOVE, EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE.

IF THIS DOCUMENT IS RETURNED EARLIER THAN 45 DAYS, THEN EMPLOYEE ADDITIONALLY ACKNOWLEDGES AND WARRANTS THAT HE/SHE HAS VOLUNTARILY AND KNOWINGLY WAIVED THE 45 DAY REVIEW PERIOD, AND THIS DECISION TO ACCEPT A SHORTENED PERIOD OF TIME IS NOT INDUCED BY CENDANT THROUGH FRAUD, MISREPRESENTATION, A THREAT TO WITHDRAW OR ALTER THE OFFER PRIOR TO THE EXPIRATION OF THE 45 DAYS, OR BY PROVIDING DIFFERENT TERMS TO EMPLOYEES WHO SIGN RELEASES PRIOR TO THE EXPIRATION OF SUCH TIME PERIOD.

THEREFORE, the parties to this Agreement and General Release now voluntarily and knowingly execute this Agreement.


EMPLOYEE


Signed and sworn before me
this __ day of ____ 2002
Cendant Group Release 2002

EMPLOYEE Agreement and Release
July, 2002
Page 6 of 7

Notary Public

Cendant Corporation

By:
Name:
Title:

Signed and sworn before me
this __ day of ____ 2002

Notary Public

EMPLOYEE Agreement and Release
July, 2002
Page 7 of 7

### EXHIBIT A
### PERSONAL STATEMENT OF TERMINATION BENEFITS
#### Attachment to Agreement and General Release
#### Date: September 13, 2002

EMPLOYEE NAME:  **Christian J. Wood** ("You" or "Your")

SOCIAL SECURITY NUMBER:  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

LAST DAY OF WORK: September 13, 2002

**Provided you have executed the attached Agreement and General Release, and have not otherwise revoked it, and provided you remain employed in good standing through the Last Day of Work set forth above, the benefits below shall become payable to you, as follows:**

TOTAL SEVERANCE:  $46,694.74

*The Severance Amount shall be payable to you in the form of a lump sum payment at the end of the first full pay period following the later of the Effective Date of the Agreement or Your Last Day of Work. All severance amounts shall be subject to applicable taxes, deductions and withholding.*

OUTPLACEMENT ASSISTANCE:

Outplacement services will be available following your Last Day of Work, but must be utilized no later than six months following your Last Day of Work.

Cendant Group Release 2002

## CHART OF NON-OFFICER SEVERANCE PAY EXAMPLES
### MAXIMUM PAYMENT IS 52 WEEKS

### DIRECTORS AND MANAGERS

| Full Years of Service at Termination (as calculated from date of hire) | Weeks of Severance Pay (two weeks of base salary for each full year of service) | Total Weeks of Severance |
|---|---|---|
| Less than 2 years of service[1] | 1 x 2 = 2 | 2 |
| 2 years of service | 2 x 2 = 4 | 4 |
| 3 years of service | 3 x 2 = 6 | 6 |
| 4 years of service | 4 x 2 = 8 | 8 |
| 5 years of service | 5 x 2 = 10 | 10 |
| 6 years of service | 6 x 2 = 12 | 12 |
| 7 years of service | 7 x 2 = 14 | 14 |
| 8 years of service | 8 x 2 = 16 | 16 |
| 9 years of service | 9 x 2 = 18 | 18 |
| 10 years of service | 10 x 2 = 20 | 20 |

### ALL JOB TITLES BELOW DIRECTOR OR MANAGER

| Full Years of Service at Termination (as calculated from date of hire) | Weeks of Severance Pay (one week of base pay for each full year of service) | Total Weeks of Severance |
|---|---|---|
| Less than 2 full years of service[2] | 1 x 1 = 1 | 1 |
| 2 years of service | 2 x 1 = 2 | 2 |
| 3 years of service | 3 x 1 = 3 | 3 |
| 4 years of service | 4 x 1 = 4 | 4 |
| 5 years of service | 5 x 1 = 5 | 5 |
| 6 years of service | 6 x 1 = 6 | 6 |
| 7 years of service | 7 x 1 = 7 | 7 |
| 8 years of service | 8 x 1 = 8 | 8 |
| 9 years of service | 9 x 1 = 9 | 9 |
| 10 years of service | 10 x 1 = 10 | 10 |

---

[1] Although Director and Managers with less than one full year of service are not entitled to severance pay under the Avis Rent A Car System, Inc. Severance Pay Plan, the Company will nevertheless be providing a severance payment.

[2] Although employees with less than one year of service are not entitled to severance pay under the Avis Rent A Car System, Inc. Severance Pay Plan, the Company will nevertheless be providing a severance payment.

**EXHIBIT 3**

12/13/2002  12:58    9185841718                    HJK LAW

# HEAD, JOHNSON & KACHIGIAN

*Patent, Trademark & Copyright Attorneys*
Moore Manor
228 West 17th Place
Tulsa, Oklahoma 74119

Raymond D. Norton
Telephone (918) 587-2000
Facsimile (918) 584-1718
E-Mail - rnorton@hjklaw.com

Law Offices:
Tulsa, Oklahoma

October 11, 2002

### CERTIFIED MAIL RETURN RECEIPT REQUESTED

Cendant Corporation
Attn: Joel Buckberg
1 Campus Drive
Parsippany, NJ   07054

Dear Mr. Buckberg:

This firm has been retained to represent Mr. Christian J. Wood in his intellectual property matters. Consequently, this communication is directed to you on behalf of Mr. Wood and his heirs.

As you may be aware, Mr. Wood was employed by Cendant's Avis Rent-A-Car contact centers as its Regional Director of Resource Planning and Management between July 29, 1996 and September 18, 2002. During the course of his employ, Mr. Wood graciously made available to Avis Rent-A-Car and Cendant a copy of his proprietary software originally entitled StaffPlan (referred to internally by Avis and Cendant as "Christal Ball" and hereinafter referred to as "Core software"). Throughout the tenure of Mr. Wood's employ, functionality enhancements had been developed to work in concert with Mr. Wood's Core software to satisfy a number of business requirements. For convenience of review and analysis, such originality enhancements are detailed as items 1 through 10 on the attached Christal Ball Functionality List. Mr. Wood acknowledges that ownership of intellectual property rights relating exclusively with such enhancements legitimately vest with Avis, Inc. consistent with Mr. Wood's Assignment Of Ideas and Inventions signed and dated 07/29/1996, copy also attached. I would, however, urge your attention be drawn to the inventions specifically excluded from this Agreement wherein Mr. Wood has specifically excluded Training Runs and Staff Planning Budget Spreadsheets. It is to these exclusions and the unauthorized continued use of Mr. Wood's core software this memorandum respectfully draws your attention.

Functionality elements 11 through 14 on the attached Christal Ball Functionality List remain the exclusive proprietary property of Mr. Wood. Unfortunately, however, Mr. Wood has been made aware that Avis continues to execute his proprietary software to satisfy its business requirements absent any implied or expressed agreement from Mr. Wood. Please be advised, you are hereby

**EXHIBIT 4**

provided notice of unauthorized execution and/or copyright infringement with respect to Functionality Items 11 through 14, and our demand that execution of such elements or works derived therefrom cease immediately.

For purposes of convenience Mr. Wood has provided this office with the following names of individuals and respective areas of responsibility he believes persist in the unauthorized execution of his software, or software derived therefrom:

1.  Mr. Tim Johnson, Regional Manager Service Administration, Avis
2.  Mr. Duke Witte, Director Resource Planning and Management, Reservation Services Division (RSD)
3.  Mr. Randy Giedt, Manager Resource Planning and Management, RSD
4.  Ms. Rachel Vorstenbosch, Corporate Manager Finance Planning and Analysis, Corporate Contact Centers
5.  Ms. Michele Schira, Vice President Resource Planning and Management, Corporate Contact Centers
6.  Mr. David Albright, Director Resource Planning and Management, Resort Condominiums International (RCI)
7.  Ms. Cortney Haber, Manager Capacity Planning, RCI
8.  Mr. Jack Snodgrass and team, Finance Department, RCI
9.  The Resource Planning and Management and Finance Planning and Analysis Departments of Avis, RCI, RSD and Corporate Support

Based upon the foregoing and our best belief and knowledge, we hereby demand that you confirm to us in writing within ten (10) days from receipt of this letter that Cendant and all business entities operating under its Management Control, (1) cease execution of all the functionality elements of the Core software (elements 11 through 14) including any derivative works thereof. Neither Avis Inc. Cendant Corporation nor any other business entity operating under the management control of Cendant has requested or received permission to use Mr. Wood's Core software, or to make or distribute copies including electronic copies. Therefore, it is this firm's belief you have willfully infringed Mr. Wood's rights under 17 USC 101 et seq. and could be liable for statutory damages as high as $150,000 as set forth in Section 504(c)(2) therein. We reiterate our demand that you immediately cease the use and distribution of all infringing works derived from Mr. Wood's core software and all copies including electronic copies of same be delivered to this office and that you desist from any other infringement of Mr. Wood's intellectual property rights in the future.

Unfortunately the infringement activity of Avis Inc. and other Cendant business entities operating under Cendant's management control have forced Mr. Wood to bring this matter to your attention. However, though no longer employed by Avis, Inc., Mr. Wood graciously acknowledges the responsibilities and career development opportunities provided him during the course of his employ. Mr. Wood further recognizes that, to seek alternative functionality to that provided via his proprietary software, Cendant has evaluated product offerings with licensing fees approaching $220,000 for each software license required. It would seem the prudent business practice here would be to explore the potential of a licensing opportunity between Mr. Wood and Cendant Corporation wherein Cendant would license such functionality and thus avoid the adverse potential of business

12/13/2002  12:58    9185841718                    HJK LAW

interruption.  To that end, Mr. Wood would welcome your inquiry with respect to engaging into licensing negotiations.

Hoping this communication will lead to a timely and amicable solution, I remain.

Regards,

HEAD, JOHNSON & KACHIGIAN

Raymond D. Norton

MGK:amd
Enclosure
cc:    Jim Schacht
        Beth Moorhouse
        Kirsten Hotchkiss

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at www.copyright.gov, write the Copy-
right Office, or call (202) 707-3000.



# FORM TX

For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

_____

TX _____ TXU _____

EFFECTIVE DATE OF REGISTRATION

Month _____ Day _____ Year _____

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

TITLE OF THIS WORK ▼

StatPlan

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the
collective work in which the contribution appeared.   Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼      Number ▼      Issue Date ▼      On Pages ▼

**2**

**a**   NAME OF AUTHOR ▼

Christian J. Wood

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼
1961

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ United States
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK
Anonymous?    ☐ Yes  ☒ No
Pseudonymous? ☐ Yes  ☒ No

If the answer to either
of these questions is
"Yes," see detailed
instructions.

**NOTE**

Under the law,
the "author" of
a "work made
for hire" is
generally the
employer, not
the employee
(see instruc-
tions). For any
part of this
work that was
"made for hire"
check "Yes" in
the space
provided, give
the employer
(or other
person for
whom the work
was prepared)
as "Author" of
that part, and
leave the
space for dates
of birth and
death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer Program in Microsoft Excel version 5.0

**b**   NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK
Anonymous?    ☐ Yes  ☐ No
Pseudonymous? ☐ Yes  ☐ No

If the answer to either
of these questions is
"Yes," see detailed
instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**   NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK
Anonymous?    ☐ Yes  ☐ No
Pseudonymous? ☐ Yes  ☐ No

If the answer to either
of these questions is
"Yes," see detailed
instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a**   YEAR IN WHICH CREATION OF THIS
WORK WAS COMPLETED   This information
must be given
1996      ◀ Year   in all cases.

**b**   DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information   Month ▶      Day ▶      Year ▶
ONLY if this work
has been published.                                                ◀ Nation

**4**

See instructions
before completing
this space.

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as
the author given in space 2. ▼

Christian J. Wood/ 19 Fair Oaks Road/ Broken Arrow/ OK/ 74014

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in
space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE
OFFICE USE ONLY

MORE ON BACK ▶   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE

Page 1 of _____ pages

# EXHIBIT 5

<table>
<tr><td>EXAMINED BY</td><td rowspan="2">FORM TX</td></tr>
</table>

EXAMINED BY                                          FORM TX

CHECKED BY

☐ CORRESPONDENCE
      Yes                                            FOR
                                                     COPYRIGHT
                                                     OFFICE
                                                     USE
                                                     ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▶                **Year of Registration** ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

a

Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

b

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                          Account Number ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/ZIP ▼

Christian J. Wood/ 19 Fair Oaks Road/ Broken Arrow/ OK/ 74014

b

Area code and daytime telephone number ▶ 918-357-5050                Fax number ▶

Email ▶  chris.wood.1@att.net

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
                                                   ☑ author
                        Check only one ▶           ☐ other copyright claimant
                                                   ☐ owner of exclusive right(s)
of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.        ☐ authorized agent of _____
                                                              Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Christian J. Wood                                              Date ▶ 11/20/2002

Handwritten signature (X) ▼

X  _Christian J. Wood_

**Certificate
will be
mailed in
window
envelope
to this
address:**

| Name ▼ |
| Christian J. Wood |
| Number/Street/Apt ▼ |
| 19 Fair Oaks Road |
| City/State/ZIP ▼ |
| Broken Arrow/ OK/ 74014 |

**• YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

Fees are subject to
change. For current
fees, check the
Copyright Office
website at
www.copyright.gov,
write to the Copyright
Office, or call
(202) 707-3000.

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: June 2002—20,000   Web Rev: June 2002   ♻ Printed on recycled paper                          U.S. Government Printing Office: 2000-461-113/20,021