IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTIAN J. WOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 03-CV-298-K(M) |
| | ) |
| CENDANT CORPORATION and | ) |
| AVIS GROUP HOLDINGS, INC., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court are Defendants' Motion to Supplement Exhibit List (Dkt. No. 167) and Plaintiff's Motion for Sanctions (Dkt. No. 155).

Defendants move to supplement their exhibit list with: (1) documents allegedly relating to Plaintiff's work on *Christal Ball* while Plaintiff was employed with Defendants ("T-Run Files"); (2) a document containing a password for *Christal Ball,* which Defendants claim was not previously available to them (the "Password Document"); and (3) financial data that relates to Plaintiff's damages. Plaintiff objects to the supplementation and further requests that Defendants be sanctioned for their delayed production of the documents that are the subject of the Motion to Supplement.

### APPLICABLE LEGAL STANDARDS

Under Federal Rule of Civil Procedure 16(b), a party must show good cause and obtain leave of the district judge to supplement pretrial exhibits. The good cause standard primarily considers the diligence of the party seeking supplementation. *See Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1213, 1221 (D. Kan. 1995). Good cause exists when the schedule cannot reasonably be met despite the diligence of the party seeking to supplement. *Id.*; FED. R. CIV. P. 16, advisory committee

1

notes to 1983 amendments. Generally, the party seeking an extension is expected to show good faith on its part and some reasonable basis for not meeting the deadline. *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir.1987). "The lack of prejudice to the nonmovant does not show 'good cause.'" *Deghand*, 904 F.Supp. at 1221 (citations omitted).

Federal Rule of Civil Procedure 37(c)(1) provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [which govern initial disclosures and required supplements thereof], or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 37(c)(1) was designed to "put teeth into the mandatory initial disclosure requirements added by the 1996 amendments." *See* 8A FED. PRAC. & PROC. CIV. 2d § 2289.1 (2004 & 2005 Supp.). Rule 37(a)(3) provides that an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose under Rule 37(c).

> A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999) (citations omitted).

**T-RUN FILES**

On October 21, 2005, Defendants' counsel notified Plaintiff that he intended to produce 148 new computer files he deemed responsive to the discovery requests issued by Plaintiff in January of

2005.[1]  As reason for the delayed production, Defendants state that after having the benefit of overall discovery in the case, counsel determined that the subject additional documents were relevant and that Plaintiff's counsel should be notified of their existence. Defendants also contend Plaintiff's arguments on summary judgment further prompted Defendants to determine that these documents might possibly be relevant and/or responsive to Plaintiffs' discovery requests. Plaintiff's objections to the supplementation are based on the following arguments: (1) Defendants can authenticate neither the T-Run Files nor the Password Document as required by FED. R. EVID. 901;[2] (2) the documents must be excluded under FED. R. CIV. P. 37(c) because there is no substantial justification for not producing them previously; and (3) the documents cannot be used for impeachment.

Defendants claim that the T-Run Files support its position that substantive portions of *Christal Ball* were created by Plaintiff while he worked for Defendants. Yet, Defendants state these documents were non-responsive to document requests by Plaintiff in January of 2005. Defendants argument is unreasonable given Plaintiff's requests for (1) "any and all documents which reflect, in whole or in part, that there is any other owner of *Christal Ball* or its constituent parts other than [Plaintiff]"; (2) "any documents which reflect, in whole or in part, your ownership of *StafPlan* or *Christal Ball*"; (3) "any and all documents which in whole or in part reflect that [Plaintiff] is not the owner of *StafPlan* or *Christal Ball*"; and (4) "any and all documents which identify those portions of *Christal Ball* source code generated after [Plaintiff] started his employment with you." (Pl.'s Reply in Support of its Mot. for Sanctions Ex. 1.)  The T-Run Files, which Defendants claim show

---

[1] The final discovery deadline in this matter was July 1, 2005.  Defendants request that eight of these documents be added to their Exhibit List.

[2] Because the Court finds exclusion appropriate on other grounds, the Court does not address this argument.

the incremental work Plaintiff performed on *Christal Ball* to make it distinct for *StafPlan* while he was employed with Defendants, are responsive to, at the very least, the above mentioned discovery requests.

Defendants next argue that the documents are for impeachment purposes only and therefore need not have been produced to Plaintiff. *See* FED. R. CIV. P. 26(a)(1)(B) ("Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties . . . .a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless *solely for impeachment.*) (emphasis added). The Court does not find this argument persuasive. As Plaintiff points out, Defendants' assertion that the T-Run Files are admissible as impeachment evidence is merely another way of asserting their work-for-hire defense. Defendants appear to admit as much. For example, when arguing that the T-Run Files are impeachment evidence, Defendants state that "the T-Run files further support Defendants' long-standing position that [Plaintiff] created the *StafPlan* and *Christal Ball* files while he worked for Defendants, beginning in 1997." (Defs.' Reply to Mot. to Supp. at 5-6.) Moreover, there is no doubt that Defendants should have initially disclosed the T-Run Files in support of their counterclaim that Plaintiff created *StafPlan* as a work-for-hire. *See* FED. R. CIV. P. 26(a)(1)(B) (requiring production of all documents supporting disclosing party's claims); FED. R. CIV. P. 26(e) (duty to supplement). As previously discussed, production of the T-Run files was also necessary in answering Plaintiff's document requests of January 2005. The T-Run Files are more than mere impeachment evidence to both Plaintiff's and Defendants' cases. *See Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir.

2001) ("If, as the judge saw it, the evidence was really more than mere impeachment evidence, then the witnesses should have been disclosed."); *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir.1993) (holding that a video surveillance tape was not "solely" impeachment evidence, and defining substantive evidence as "that which is offered to establish the truth of a matter to be determined by the trier of fact. . . . Impeachment evidence, on the other hand, is that which is offered to 'discredit a witness . . . to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] . . . testimony.'" *Id.* (citations omitted)).

In sum, the Court concludes that (1) Defendants did not comply with the initial disclosure and supplementation rules to defend their counterclaim against Plaintiff, (2) Defendants did not produce these documents although they were overtly responsive to Plaintiff's discovery requests, and (3) the T-Run Files cannot be said to be impeachment documents alone. Therefore, the Court finds that no good cause for supplementation exists, and the Court moves to the analysis under Rule 37.

The Court concludes that Defendants' failure to timely disclose the T-Run Files was not harmless. Clearly, 148 documents going to the heart of Plaintiff's claim would likely change much of the lay and expert witness testimony in this case. The only way the prejudice could be cured would be to restart discovery, at great costs in both time and money to all parties. This is an unacceptable solution. Moreover, Defendants' assertions regarding their delayed disclosure of the T-Run Files are suspect in that the documents were clearly required to be produced under Rule 26 and clearly responsive to Plaintiff's discovery requests. None of the factors that the Court must consider under Rule 37 favor Defendants. Accordingly, Defendants shall not be allowed to use the T-Run Files for any purpose at trial. *See Salgado v General Motors Corporation*, 150 F.3d 735, 742 (7th Cir. 1998) (stating that "the sanction of exclusion is automatic and mandatory unless the

sanctioned party can show the violation of Rule 26(a) was either justified or harmless").

**PASSWORD DOCUMENT**

Utilizing the Password Document, Defendants claim their expert was able to review areas of *Christal Ball* that had been previously hidden and protected and that "[t]hrough this review, Defendants' expert was able to confirm that many of the underlying formulas in *Christal Ball* are not the same formulas used in *StafPlan* and are expressed differently." (Defs.' Resp. to Pl.'s Mot. for Sanctions at 8.) Defendants note that they had requested such passwords during discovery but Plaintiff did not provide them. Defendants also assert that because Defendants did not have all of the passwords, their expert generously assumed that the hidden material in *Christal Ball* was identical to that in *StafPlan*. Defendants ask the Court to believe that (1) they did not have the necessary passwords to defend against the copyright infringement claim but did not move the Court to compel production of same; and (2) their expert simply decided to construe material in Plaintiff's favor where it was Plaintiff that was allegedly preventing Defendants from obtaining the necessary information. The Court finds this to be implausible.

In any event, Plaintiffs assert that Defendants' claims that their expert found new evidence of dissimilarity using newly located passwords is demonstrably false. Plaintiff claims that Defendants have had access to the whole of *StafPlan/Christal Ball* throughout this litigation and that Defendants overrode password blockades so as to obtain any access that remained blocked. Defendants make no response to these allegations. Further, even if Defendants' assertions about the Password Document are true, Defendants have possessed the Password Document since July. Defendants' expert's deposition was not until September. Thus, if Defendants' expert discovered information about the software via the Password Document, he could have testified about it at that

point in time. For these reasons, the Court finds no good cause for supplementation of the Password Document under Rule 16.

### FINANCIAL DATA

The financial data that Defendants seek to add to the Exhibit List not only pertains to information about Defendants' expenses, but also to information regarding call-center data from one of Defendants' business units. The latter data is akin to information from which Plaintiff has previously extrapolated to prove damages. Plaintiff argues these documents should not be added as exhibits on the basis that Defendants did not previously produce them.

*Defendants' Costs*

Defendants want to supplement with evidence that will show reduction of the gross revenues attributable to Plaintiff. Under the Copyright Act, it is Defendants' burden to show their expenses. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). In Defendants' response to Plaintiff's Motion for Summary Judgment, Defendants argue that they have provided "more than sufficient documentation" about their expenses. (Defs.' Resp. to Pl.'s Mot. for Summ. J. p. 20.) Defendants point to Plaintiff's expert report on damages, which states that "[for information regarding expenses], I relied primarily on documents provided by the defendants. Many of these documents provided information regrading the expenses required to arrive at earnings, before interest, taxes, depreciation, and amortization . . . . Where available, I relied on these expense figures. This assumption favors the defendants because such expenses include indirect expenses (*i.e.* overhead [fixed costs], as well as direct [variable] expenses." (Pl.'s Mot. for Summ. J. Ex. 0 at 7-9.)

Defendants offer no specific reason why the information was not produced timely nor any showing of good cause for the delayed production. Because under § 504(b), it is Defendants' burden to show evidence of its expenses, and because it was apparently comfortable with what it had provided to Plaintiff's damage expert prior to the completion of his report, the Court denies Defendants' request to supplement with additional evidence of its costs because it is has shown neither a need nor good cause for the supplementation. Were the Court to proceed with the analysis under Rule 37(c), the Court believes it would likewise find Defendants are precluded from submitting these documents because their failure to produce these documents would render Plaintiff's damage expert's opinion irrelevant and cause Plaintiff severe prejudice. Further, Defendants have not shown that they acted in good faith in failing to produce the document relating to their additional expenses.

*Plaintiff's Damages*

In making damage calculations, Plaintiff's damage expert used information timely produced by Defendants to Plaintiff from certain of its business units. Because Defendants did not produce data from all of its affected business units, Plaintiff's damage expert was forced to extrapolate from the data provided to him. Defendants now produce additional relevant data, claiming it was not until after they received the report of Plaintiff's damages expert that Defendants became aware of Plaintiff's theory that certain of Defendant's profits were attributable to the uses of *Christal Ball* as a result of the alleged decrease in the abandonment rate and/or increase in the calls handled at the various business units that used *Christal Ball*. Defendants further state that Plaintiff never specifically asked for this information. Plaintiff presents credible evidence otherwise, indicating that in fact, Plaintiff did ask for data similar to that only recently produced. Again, under Rule 16(b), Defendants have shown no good cause for the delay in providing this additional information.

Likewise, under Rule 37(c), Defendant can offer no justification for the prejudice that its failure to produce this information causes Plaintiff. More importantly, Defendants do not appear to be able to show that their actions regarding the non-production of this data was mere negligence. (*See generally* Pl.'s Mot. for Sanctions Exs. N-P.)

However, rather than altogether preclude the use of this data at trial, the Court invokes the sanction provided in Rule 37(b)(2)(B)[3] and precludes Defendants from arguing that Plaintiff cannot extrapolate from the data provided him to present damage arguments to the jury. Therefore, Defendants shall be allowed to supplement their exhibit list with the documents regarding Plaintiff's damages, but, as a sanction for late production, Plaintiff's damages expert shall be allowed the Reasonable extrapolation necessary to calculate call-handling efficiency resulting from the use of *StafPlan/Christal Ball*, as to business units for which Defendants have not produced adequate call-center data. This is a proper and admissible method of calculating Defendants' revenues attributable to the infringement. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996) (stating that "if evidence available from the infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer").

---

[3]"[T]he court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: [a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." FED. R. CIV. P. 37(b)(2)(B).

CONCLUSION

Defendants' Motion to Supplement Exhibit List (Dkt. No. 167) is DENIED in part and GRANTED in part as set forth herein. Plaintiff's Motion for Sanctions (Dkt. No. 155) is GRANTED to the extent set forth herein. Defendants shall pay all of Plaintiff's costs associated with its Motion for Sanctions. *See* Fed. R. Civ. P. 37(c)(1).

ORDERED this 5 day of JANUARY, 2006.

*/s/ Terence Kern*

TERENCE KERN
UNITED STATES DISTRICT JUDGE