# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHRISTIAN J. WOOD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 03-CV-298-TCK-FHM |
| | ) |
| **CENDANT CORPORATION and** | ) |
| **AVIS GROUP HOLDINGS, INC.,** | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

The above-styled case was tried to the Court without a jury on April 20-21, 2006 and April 24-27, 2006. Post-trial briefing has been completed. After considering the pleadings, the testimony and exhibits admitted at trial, all of the briefs and arguments presented by counsel for the parties, and being fully advised in the premises, the Court enters the following Findings of Fact and Conclusions of Law and Judgment, in accordance with FED. R. CIV. P. 52, as follows:

## FINDINGS OF FACT

### I. Wood's employment with Holiday Inn and Avis

1. Christian J. Wood ("Wood") was employed by Holiday Inn from 1993-1996. *See* Docket Entry 219, at 2. During his employment at Holiday Inn, Wood used an Excel spreadsheet called *Training Run* or *T-Run* to assist in staff planning and budgeting for Holiday Inn's call centers. *See id.* When Wood left Holiday Inn, he had in his possession a hard copy of the *Training Run* program used at Holiday Inn. 1RR:172.

2. About one month after leaving Holiday Inn, Wood began work at Avis in July 1996 as manager of workforce management. 2RR:270-71. Wood held various other titles at Cendant, including director of workforce management and director of resource planning management. 2RR:271. Wood's employment with Defendants ended in

September 2002. 2RR:231.

3. When Wood began his employment with Avis, he executed a document entitled "Assignment of Ideas and Inventions." Exhibit 3. This document allowed Wood to maintain ownership of intellectual property he created before joining Avis and transferred to Avis any intellectual property he developed as an employee. The only inventions Wood claimed to have created before joining Avis were "Training run and Staffplanning Budget Spreadsheets." Exhibit 3; 1RR:178-79. On the Assignment of Ideas and Inventions document, Wood made no specific reference to *StafPlan* itself. *See* Ex. 3.

4. When Wood began his employment with Cendant, he also executed a Confidentiality Agreement under which he agreed that any "records, reports, notes, compilations, computer runs, programs and other recorded matter and copies of such material which is of a confidential or proprietary nature relating to Avis' property, operations, employees and business affairs, the documents, which I receive or produce during my employment are the property of Avis exclusively." Exhibit 22; 2RR:274.

5. Wood claims that he created *StafPlan* – after he left Holiday Inn and before he began work at Avis – in July 1996 in part based on the July 16, 1996 create date listed in the properties tab of the computer file. *See* 1RR:39, 173-74. The Court finds, however, that Plaintiff's assertion is not credible as the evidence showed that a user can easily alter or modify the create date of the software by (a) resetting the clock on the computer and creating a new file, and (b) copying and pasting the contents of an existing file into the new file, thereby creating an exact duplicate of the original file with a new "create" date. 1RR:201-02; 2RR:403-03, 405-06. A user can also change the modification date on a file by resetting the clock on the computer and saving the file. 1RR:201-02; 2RR:403-03, 405-06. Accordingly, the create and modification dates contained in *StafPlan* are not dispositive of when the software was actually created or completed.

**II.     *Christal Ball* and *StafPlan* were developed over five years at Avis**

6.      The development of *Christal Ball* during the time of Wood's employment shows that Wood created a significant portion of what was later registered with the Copyright Office as *StafPlan* while working at Cendant.  *See, e.g.*, 5RR:742-47.

7.      In January 1999, three years after Wood began working at Avis and as part of Cendant's company-wide standardization efforts, Wood presented and demonstrated an Excel spreadsheet file named *T-Run General Sales* or *Training Run* to Cendant. 1RR:187, 193-94, 202; 4RR:569.  Wood was instructed to modify and enhance the spreadsheet to meet the company's needs due to various limitations it had.  1RR:196, 206; 4RR:582;Exhibit 7 at p. 2.

8.      Following the meeting at which *T-Run General Sales* was demonstrated, Avis requested that Wood "add the different ASA and AHT levels into" the software.  Exhibit 7 at p.2.

9.      In May 1999, Avis began using a modified version of the *T-Run General Sales* file that Wood renamed *Christal Ball*.  3RR:432; 4RR:566.  At about that same time, Wood also distributed *Christal Ball* to other Cendant units.  *See, e.g.*, 2RR:237; 4RR:546, 578. *Christal Ball* was first implemented at various Cendant divisions from May 1999 through the Spring/Summer of 2000.  2RR:234-35.

10.     According to Wood, all of the features of *StafPlan* were not fully implemented at Cendant until the Spring/Summer of 2000.  *Id*.  Wood testified that he had not fully copied over all of *StafPlan* to Cendant until June 2000.  *Id*.

11.     Over the years of Wood's employment with Avis, Wood made many other enhancements and modifications to *Christal Ball* at Cendant's request. Exhibits 10, 15, 16, 17.

12.     In November 2001 – about one year before leaving Cendant – Wood took a copy of *Christal Ball* home.  Exhibit 87 (Properties Tab showing modification date of November 2001).

13.     *StafPlan* includes a number of enhancements, corrections, and modifications not found in *T-Run General Sales* or the first version of *Christal Ball* distributed in May of 1999, but found in later versions of *Christal Ball*, including a much expanded range of handle times, different Erlang values, and a different training curve.  Exhibit 503 (CD T-Run General Sales); (Exhibit 87 )(CD of Christal Ball);  Exhibit 500 (CD of Christal Ball); 3RR:502-04, 506, 507-09.

14.     Wood used *Christal Ball* to finish *StafPlan* and, in November 2002, submitted a copy of *StafPlan* to the Copyright Office for registration.  Exhibit 1 (Certificate of Copyright Registration); Exhibit 106 at p. 2 (Bates number 000201).

15.     The copyrighted version of *StafPlan* has a last modified date of November 2002.  Exhibit 505.

16.     Wood took no steps to obtain a copyright registration until *after* his relationship with Avis had terminated.  1RR:222; 2RR:250. The version of *StafPlan* Wood submitted to the Copyright Office contained "styles" referencing *Christal Ball*.  Exhibits 505, 100 (505-CD of StafPlan from U.S. Copyright Office; 100-Electronic Copy of StafPlan); 1RR:67-68; 2RR:233.

**III.    *StafPlan* was derived from *Christal Ball*, which was first developed at Cendant.**

17.     The evidence showed that Wood did not create the copyrighted version of *StafPlan* in July 1996; *StafPlan* or *Christal Ball*, was developed after Wood began working at Cendant.  The Court finds that Wood presented no credible evidence that he created the copyrighted version of *StafPlan* in July 1996.

18.     *Christal Ball* was not derived from *StafPlan*, as Wood alleges; rather, *StafPlan* was derived from *Christal Ball*.  *See* 2RR:241-42; 5RR:743-47.  Accordingly, in using *Christal Ball*, after Wood left the company, Cendant did not make unauthorized copies of *StafPlan*.

19.     Wood made *Christal Ball* within the course and scope of his employment with Cendant, *see* 3RR:451-52, and Cendant owns the copyright in *Christal Ball*.

20. The version of *StafPlan* that Wood submitted to the Copyright Office and ultimately registered was created from material from *Christal Ball*, which was developed in the course and scope of Wood's employment with Defendants. Exhibit 505 (CD of StafPlan from U.S. Copyright Office).

21. To the extent that certain portions of *StafPlan*, including the AHT calculator and the Erlang tables, may contain copyrighted material that is similar to *StafPlan*, Wood copied those materials from *Christal Ball* to *StafPlan*. *See* 5RR:742-47; 3RR:502-04, 506, 507-09.

**A.   Development History.**

22. The evolution of *Christal Ball* – when compared to the version of *StafPlan* that Wood registered with the Copyright Office – shows that *Christal Ball* was created and developed during Wood's employment with Cendant and Avis and that *StafPlan* was derived from *Christal Ball*. *See* 3RR:497-98, 489-90, 502-04, 506, 507-09; 4RR:687-88, 690-92; 5RR:742-47.

23. As part of Cendant's efforts to standardize staff-planning software across Cendant's various business units, Wood demonstrated a program called *T-Run General Sales*. Exhibit 503 (CD T-Run General Sales); 1RR:193-94, 202; 4RR:569. After the demonstration in January 1999, Cendant asked Wood to enhance and modify the program. Exhibit 7 at p. 2 (1/23/99 memo regarding Staffing Plan Standardization Meeting); 1RR:196, 206; 3RR:451-52. That enhanced and modified program became known as *Christal Ball*. 1RR:197, 198.

24. Between 1999 and 2002, the *Christal Ball* program was developed, enhanced, and modified by Wood at Avis. 1RR:198, 212-15; 4RR:575-78.

25. Wood admits that 10 of the 16 functionality elements of *Christal Ball* legitimately vest with Avis. Exhibit 537 (Letter from Wood's attorneys to Cendant); 1RR:179-80. As shown, *infra*, the remaining 6 elements were also developed at Avis during Wood's employment.

26.     The Court has reviewed the Erlang tables, the average-handle time values in those tables, the training-curve formulas and values in the AHT Calculator Sheet, and the number of call centers contained in several versions of the software created at Cendant at four different points in time:  (I) *T-Run General Sales* (January 1999) (the version of the software demonstrated to Cendant officials as part of the standardization process) (Exhibit 503) (CD T-Run General Sales); (ii) *Christal Ball Hotel* (May 1999) (the version of the software put into place at Avis and distributed to the hotel unit) (Exhibit 501) (CD Staff Model 2003 Operations Staffing Model – Super 8); (iii) *Christal Ball Pre-11/01* (as reflected in certain data in the AHT Calculator Sheet of the November 2001 version of *Christal Ball* Wood took home with him) (Exhibit 87 ) (CD of *Christal Ball*); and (iv) *Christal Ball 11/01* (the version of *Christal Ball* Wood produced and took home with him in November 2001) (Exhibit 87) (CD of Christal Ball); *see also* Exhibit 765 (Defendants' opening Power Point presentation).  The Court has compared these features (including the advancement, development, and sophistication of these features) to the version of *StafPlan* filed with the Copyright Office.

27.     The Court finds that the Average Handle Times (AHT) in *StafPlan* do not match the version of *Training Run General Sales* and *Christal Ball* demonstrated and used in January and May of 1999 but instead match the later versions of *Christal Ball*, as demonstrated in the table below:

| DATE | FILE NAME | AHT 1ST VALUE | SKIP VALUES | HIGHEST AHT VALUE |
|---|---|---|---|---|
| 1/99 | T-Run Gen Sales [1] | 0 | 10 through 110 | 400 |
| 5/99 | Christal Ball Hotel [2] | 0 | 10 through 110 | 1200 |
| 11/01 | Christal Ball Master 3 Wk Training [3] | 10 | NONE | 3,600 |
|  | StafPlan [4] | 10 | NONE | 3,600 |

(Exhibit 765 at p. 12)

        28.     The Court finds that the training curve formula and training curve values in *StafPlan* do not match the version of *Training Run General Sales* and *Christal Ball* demonstrated and used in January and May of 1999 but instead match the later versions of *Christal Ball*, as demonstrated in the table below:

| DATE | FILE NAME | FORMULA | VALUES | | | | |
|---|---|---|---|---|---|---|---|
| 1/99 | T-Run Gen Sales [5] | Formula 1 | 0.82 | 0.9 | 0.95 | 0.96 | 0.97 |
| Pre-11/01 | Christal Ball Master 3 Wk Training ("used to be in Christal Ball") [6] | Formula 2 | 0.529677 | 0.315419 | 0.219003 | 0.145727 | 0.092968 |
| 11/01 | Christal Ball Master 3 Wk Training [7] | Formula 2 | 0.75 | 0.53 | 0.37 | 0.27 | 0.19 |
|  | StafPlan [8] | Formula 2 | 0.75 | 0.53 | 0.37 | 0.27 | 0.19 |

---

[1] Exhibit 503 (CD T-Run General Sales, "Erlang,Occupancy Calculator" Sheet, BP3 – BP33)
[2] Exhibit 501 (CD Staff Model 2003 Operations Staffing Model – Super 8, "Christal Table" Sheet, CE3 – CE113)
[3] Exhibit 87 (CD of Christal Ball, "IC" Sheet, L2 – L362); Exhibit 762 (CD of StafPlan and Christal Ball that is not password-protected).
[4] Exhibit 505 (CD of StafPlan, "Erlang,Occupany Calculator" Sheet, E3 – E363).
[5] Exhibit 503 (CD T-Run General Sales, "AHT Calculator" Sheet, B13 – B17).
[6] Exhibit 87 (CD of Christal Ball, "HT1" Sheet, J6 – Q6); Exhibit 762 (CD of StafPlan and Christal Ball that is not password-protected).
[7] Exhibit 87 (CD of Christal Ball, "HT1" Sheet, J4 – Q4); Exhibit 762 (CD of StafPlan and Christal Ball that is not password-protected).
[8] Exhibit 505 (CD of StafPlan, "AHT Calculator" Sheet, B13 – C27).

(Exhibit 765, at p.2).

      29.    The Court finds that the Erlang Tables in *StafPlan* do not match the tables in the version of *Training Run General Sales* and *Christal Ball* demonstrated and used in January and May of 1999 but instead match the later versions of *Christal Ball*, as demonstrated in the table below:

| Date | File Name | LOAD | AHT | ASA=5 Intercept | ASA=5 Slope | ASA=10 Intercept | ASA=10 Slope | ASA=15 Intercept | ASA=15 Slope |
|---|---|---|---|---|---|---|---|---|---|
| 1/99 | T-Run Gen Sales[9] | 12.5<= x <25 | 190 | 1.1040 | 3.7000 | 1.0720 | 3.1000 | 1.0640 | 2.6000 |
| 5/99 | Christal Ball Hotel[10] | 12.5<= x <25 | 190 | 1.1040 | 3.7000 | 1.0720 | 3.1000 | 1.0640 | 2.6000 |
| 11/01 | Christal Ball Master 3 Wk Training[11] | 12.5<= x <25 | 190 | 1.0987 | 3.7801 | 1.0701 | 3.1344 | 1.0555 | 2.7371 |
|  | StafPlan[12] | 12.5<= x <25 | 190 | 1.0987 | 3.7801 | 1.0701 | 3.1344 | 1.0555 | 2.7371 |

(Exhibit 765, at p. 10).

      30.    The Court reviewed the Erlang Values in each of the relevant spreadsheets in evidence by analyzing the Erlang Values corresponding to a load of 12.5 to 25 with an average handle time (AHT) of 190. In the *T-Run General Sales* file from January 1999, these Erlang Values are as shown below:

---

[9] Exhibit 503 (CD T-Run General Sales, "Erlang,Occupancy Calculator" Sheet, BO72 – BZ72)
[10] Exhibit 501 (CD Staff Model 2003 Operations Staffing Model – Super 8, "Christal Table" Sheet, CD12 – CS12)
[11] Exhibit 87 (CD of Christal Ball, "IC" Sheet, BU21-CE21); Exhibit 762 (CD of StafPlan and Christal Ball that is not password-protected).
[12] Exhibit 505 (CD of StafPlan, "Erlang,Occupany Calculator" Sheet, AP22 – BD22)



(Exhibit 503) (CD of *T-Run General Sales*)

31. In the *Christal Ball Hotel* file originally from May 1999, the Erlang Values for the same load and AHT are as shown below:



(Exhibit 501)

32. In the *Christal Ball Master 3 Wk Training* file from November 2001 (the version produced by Wood), the Erlang Values for the same load and AHT are as shown below:



(Exhibit 87); (Exhibit 762).

33. In the *StafPlan* file, the Erlang Values for the same load and AHT are as shown below:



(Exhibit 100)

34. The Court finds that *StafPlan* contains certain error-correction features while the spreadsheets used in 1999 (such as *T-Run General Sales*) did not contain these corrections. 5RR:743-44, 746-47. The Court finds no credibility to the claim that Wood had an error-free version of *StafPlan* in 1996, but nevertheless provided Cendant with a version that contained errors in 1999. *See id*. The evidence is consistent with the fact that Wood developed *StafPlan* after developing *Christal Ball* at Cendant.

35. The Court also finds that *StafPlan* (allegedly created in 1996 before Wood began his employment with Defendants) is set up for six call centers – the same number of call centers Avis employed in 1999 when the development of the software began. Exhibits

-10-

100, 503, 505; 3RR:425. Significantly, when Wood began his employment with Avis in 1996, the company had only three call centers.

36.   Based on this comparison, the Court finds that the Erlang Slope/Intercept Values, range of AHT values, and the training-curve formulas and values contained in *StafPlan* were developed at Cendant.

37.   Wood claims that the differences between the early versions of *Christal Ball* and the copyrighted version of *StafPlan* are based on the fact that he had to manually input *StafPlan* onto Cendant's Macintosh computers because he allegedly developed *StafPlan* on a PC. This explanation is not credible. The weight of the evidence is that Excel files are easily transferable between PC and Macintosh computers and that *T-Run General Sales* was demonstrated on a PC in January 1999. *See, e.g.,* 2RR:269; 3RR:448.

38.   To the extent that any of these Findings of Fact constitute Conclusions of Law they should be so considered.

## CONCLUSIONS OF LAW

**B.   The work-made-for-hire doctrine.**

39.    Accordingly, the Court finds that the development history of *Christal Ball* establishes that the elements of *Christal Ball* incorporated into *StafPlan* were developed at Cendant during Wood's employment with Avis and Cendant. *See* 4RR:687-88, 690-92. Consequently, the Court concludes, as a matter of law, that *Christal Ball* is a work made for hire owned by Cendant and that Cendant does not need Wood's permission to use the spreadsheet because any parts of *Christal Ball* that are similar to *StafPlan* were copied by Wood from *Christal Ball*. *See* 17 U.S.C. §§ 101, 201(b); *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989); *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991); *see, e.g., Autoskill Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1488 (10th Cir. 1993).

40.   Because *Christal Ball* was developed at Cendant, Cendant had the right to control

the means and the manner of the creation of the spreadsheet, and in fact, provided the instrumentalities and tools for its creation on Cendant's premises. Exhibits 3, 22.

41.  Cendant and Avis had an employer-employee relationship with Wood for six years from July 1996 through September 2002, and in connection with that relationship paid Wood salary and benefits and required Wood to alter or modify *Christal Ball* in a timely manner. Exhibits 7, 10, 15, 16, 17; *see* 2RR:270-71.

42.  The Court concludes, as a matter of law, that *Christal Ball* is Cendant's work made for hire, and that Cendant – not Wood – is the owner of *Christal Ball*, including any portions of *Christal Ball* contained in *StafPlan*. *See* 17 U.S.C. §§ 101, 201(b); *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991); *see, e.g.*, *Autoskill Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1488 (10th Cir. 1993).

**C.  The facts surrounding Wood's employment and subsequent termination do not establish a claim of ownership.**

43.  During the course of Wood's six-year employment with Cendant, Wood never did anything in his performance reviews or evaluations to refute the fact that *Christal Ball* was developed while he was an employee at Cendant. 1RR:195, 210, 213, 214-15; 2RR:276; 3RR:450, 452; Exhibits 10, 15, 16, 17 and 18 (10-2001 Wood Performance Appraisal; 15-2000 Wood Performance Appraisal; 16-2000 Performance Management & Development Plan; 17-1999 Wood Performance Management & Development Plan; 18-9/5/02 email regarding bonus).   Similarly, after the Neuburger speech, Wood never asserted copyright ownership rights with respect to *Christal Ball*. 1RR:220.

44.  Although the severance agreement Cendant presented to Wood in September 2002 references *Christal Ball*, the Court finds that this is not an indicia that Cendant believed or that Wood did actually *Christal Ball*. *See* 2RR:279-82. Rather, Cendant had a concern that Wood might try to impede or sabotage Cendant's further use of *Christal Ball*. 2RR:279-80.

45.     The severance agreement Cendant presented to Wood, including the terms and compensation arrangement contained therein, was unrelated to Wood's claim of ownership with respect to *StafPlan* or *Christal Ball*.  2RR:279-82.  The amount of severance benefits offered to Wood was standard and similar to those offered to other Cendant employees with comparable service time.  2RR:282.

46.     To the any of these Conclusion of Law constitute Findings of Fact, they should be so considered.

**IV.    Judgment**

It is the Order of the Court that judgment be entered in favor of Defendants and against Plaintiff.[13]  Defendant shall submit same within ten (10) days of the date of this Order.

ORDERED this 20th day of JULY, 2006.

*Terence C Kern*

TERENCE C KERN
United States District Judge

---

[13] Defendants' Motion for Entry of Proposed Findings of Fact and Conclusions of Law (Docket No. 251) is GRANTED to the extent set forth herein.  Furthermore, because Plaintiff's Motion to Strike Portions of Dr. Robert L. Hayes [sic] Trial Testimony pertains to conclusions of fact by Dr. Hayes that the Court did not rely on in making its decision, that Motion is moot.