**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CHRISTIAN J. WOOD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 03-CV-298-TCK-FHM |
| | ) |
| **CENDANT CORPORATION and** | ) |
| **AVIS GROUP HOLDINGS, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Before the Court are Defendants' Motions for Costs (Doc. 258); Defendants' Motion for Attorneys' Fees (Doc. 259); and Plaintiff's Motion for Attorneys' Fees Incurred in Connection with Motion for Sanctions (Doc. 271). This Court held a six-day bench trial of this copyright infringement action in April 2006. On July 20, 2006, the Court issued its Opinion and Order finding in favor of Defendant on all claims. On August 15, 2006, the Court entered Judgment consistent therewith. Due to the Tenth Circuit's dismissal of Plaintiff's appeal (Doc. 300) and Defendants' cross appeal (Doc. 303), the Court's ruling on these motions will result in final resolution of the lawsuit.

**I.     Fees and Costs Awarded to Plaintiff as Sanctions Against Defendants**

By Order dated January 6, 2006 (Doc. 190), the Court ordered Defendants to pay Plaintiff all "costs" associated with the filing of Plaintiff's first Motion for Sanctions as part of sanctions imposed upon Defendants for certain discovery violations. (*See* Doc. 155).[1] By Order dated July 20, 2006 (Doc. 254), the Court granted Plaintiff's Motion for Sanctions for Defendants' Continued

---

[1] The Court intended the word "costs" to include attorneys' fees.

1

Discovery Abuse (Doc. 224). Therein, the Court stated:

> Because Defendants' actions can be considered neither harmless or justified and demonstrate a repeated pattern of discovery violations that at best show Defendants were careless in conducting discovery and at worst indicate that they purposefully did not turn over documents that they were required to produce, the Court imposes the following sanctions. Defendants are ordered to pay for all attorney's fees and costs from the time the unproduced documents were produced to Plaintiff through the following day of trial. This shall include not only the time spent in preparing the Motion for Sanctions and time spent preparing for Borboa's cross examination but also all fees and costs for trial time during April 24 and 25, 2006.

Accordingly, the Court sanctioned Defendants on two separate occasions during the course of the litigation.

On September 22, 2006, Plaintiff's counsel informed the Court that the fees and costs ordered as sanctions total $45,836.25. Defendants did not object to the calculation or reasonableness of this amount. The Court finds the fees and costs expended by Plaintiff's counsel, as specifically set forth in Exhibit A to Plaintiff's Motion for Attorneys' Fees Incurred in Connection with Motion for Sanctions, to be fair and reasonable. Accordingly, Defendants are hereby ORDERED to pay Plaintiff's counsel a fee award in the amount of $45,836.25 as sanctions for their litigation conduct.

**II.     Defendants' Motion for Attorneys' Fees**

Defendants move for their attorneys' fees pursuant to 17 U.S.C. § 505, which authorizes the award of reasonable attorneys' fees to the prevailing party in a suit arising under the Copyright Act. 17 U.S.C. § 505; *Fogerty v. Fantasy*, 510 U.S. 517, 534 (1994). The Supreme Court has held that, under section 505, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty*, 510 U.S. at 534. There is no precise rule or formula for determining whether fees should be awarded, but the Supreme Court and Tenth Circuit have suggested consideration of the following

nonexclusive factors: (1) frivolousness of losing party's case; (2) improper or bad faith motivation of the losing party; (3) objective unreasonableness of losing party's case (factual and legal components); and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* at 535 n.19; *Palladium Music, Inc. v. Eatsleepmusic, Inc.*, 398 F.3d 1193, 1200 (10th Cir. 2005). The Court must apply the factors "to prevailing plaintiffs and prevailing defendants in an evenhanded manner" and must apply the factors in a manner that is "faithful to the purposes of the Copyright Act." *Palladium Music, Inc.*, 398 F.3d at 1200 (quoting *Fogerty*, 510 U.S. at 535 n.19).[2]

According to the Supreme Court, "[t]he primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. To this end, copyright law "assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Id.* (quoting *Feist Pub'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991)). The policies served by the Copyright Act are "more complex" and "more measured" than "simply maximizing the number of meritorious suits for copyright infringement." *Id.* at 526. The monopoly privileges granted by Congress through the Copyright Act, while intended to motivate the creative activity of authors, are "limited in nature and ultimately must serve the public good." *Id.* In

---

[2] Based on Fifth Circuit precedent, Defendants argue that, although left to the trial court's discretion, an award of fees to the prevailing party under 17 U.S.C. § 505 is the "rule" rather than the exception. *See McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994) (stating that award of fees to prevailing party is the rule and that such fees should be routinely rewarded). However, this Fifth Circuit case was decided before the Supreme Court's decision in *Fogerty*, which only states that fee awards are in the Court's discretion and does not state that awards should be awarded routinely. *See Fogerty*, 510 U.S. at 534-35. Nor has the Tenth Circuit adopted such a rule. *See Palladium Music, Inc.*, 398 F.3d at 1200.

applying the nonexclusive list of factors, the Court is mindful of these objectives of the Copyright Act.

      A.     <u>Frivolousness/Objective Unreasonableness/Motivation of Plaintiff</u>

The Court decided several pretrial motions, including motions to dismiss and motions for summary judgment. The Court also presided over a six-day bench trial.[3] Therefore, the Court is very familiar with the facts and legal issues presented in this case. Based on this knowledge and experience, the Court easily concludes that Plaintiff's copyright infringement claim was in no way frivolous or based on objectively unreasonable factual and legal positions.

Defendants argue that Plaintiff's case was "patently frivolous" and objectively unreasonable because the Court ultimately found for Defendants and because the Court made certain "negative credibility findings" against Plaintiff. Defendant's contention that the case was frivolous or objectively unreasonable is wholly without merit. As the Court's Orders ruling on dispositive motions throughout this case make clear, Plaintiff had a legitimate (albeit unsuccessful) copyright case. Notably, it was undisputed at various times during these proceedings that the copyrighted version of StafPlan was created by Plaintiff in July 1996, prior to his employment with Defendants, and that Christal Ball was a "derivative work" of StafPlan. (*See* 1/27/04 Order 1 n.2, 9/16/04 Order 2 n.2 & 5, 4/11/06 Order 4 n.3.) Defendant even argued, at the time of summary judgment, that StafPlan was based on a program that Plaintiff created *before* July 1996, when he was employed by Holiday Inn and that large portions of StafPlan were therefore owned by Holiday Inn. The Court flatly rejected this "Holiday Inn defense", finding that Defendant's evidence was insufficient to create a question of fact and that Plaintiff was entitled to judgment as a matter of law. (4/11/06

---

[3] The parties consented to a trial by the Court.

Order 9.) The Court also rejected Defendant's attempt to obtain summary judgment based on estoppel, finding that Plaintiff's evidence created a "strong inference of Plaintiff's intent to maintain StafPlan as his own." (*Id.* 7.) The Court further found that Plaintiff owned, at a minimum, a thin copyright in StafPlan. (*Id.* 17.) The Court intended that trial would consist of expert testimony proving or disproving the "supersubstantial similarity" between StafPlan and Christal Ball. (*Id.* 18-20.) Going into trial, Plaintiff had survived every dispositive motion, had successfully discredited Defendant's expert, and had persuaded the Court that he owned at least a thin copyright in StafPlan. Despite significant discovery abuses by Defendants and despite Defendants' ever-changing defense theories, Plaintiff successfully defended against all attempts to dispose of the case by summary judgment. Such success evidences that Plaintiff's case was far from frivolous or objectively unreasonable.

Unfortunately for Plaintiff, when the Court had the benefit of live testimony and more detailed technical presentations regarding StafPlan and Christal Ball, the landscape of this case changed substantially. The Court, acting as factfinder, did not find Plaintiff's testimony or evidence credible as to the July 1996 create date of StafPlan. The Court had accepted this fact as true for purposes of most pretrial issues. However, after hearing the evidence at trial, the Court ultimately concluded that "Wood did not create the copyrighted version of StafPlan in July 1996" and that "StafPlan or Christal Ball was developed after Wood began working at Cendant." (7/20/06 Order 4.) The Court also concluded, contrary to prior rulings, that "Christal Ball was not derived from StafPlan, as Wood alleges; rather, StafPlan was derived from Christal Ball." (*Id.*) As support for this conclusion, the Court found, *inter alia*, that the copyrighted version of StafPlan included a "number of enhancements, corrections, and modifications not found in . . . the first verison of

Christal Ball distributed in May of 1999, but found in later versions of Christal Ball, including a much expanded range of handle times, different Erlang values, and a different training curve." (*Id.*) Because the Court found that Christal Ball was owned by Cendant and that "any parts of Christal Ball that are similar to StafPlan were copied by Wood from Christal Ball [to StafPlan]," the Court found in favor of Defendants. (*Id.* 10.) Obviously, some of these determinations turned on difficult factual and technical evidence that was either not properly presented by the parties or not properly evaluated by the Court prior to trial. These determinations also turned on assessing the credibility of witnesses, which can only be done during trial.

Just because the Court, acting as factfinder, did not believe Plaintiff's testimony does not make his case frivolous. To the contrary, Plaintiff's legal and factual positions were tenable. His position was that he created StafPlan prior to being employed by Defendants, that he specifically excluded StafPlan at the time from rights being conveyed to Defendants at the time he was hired, and that Defendants intentionally used a program that infringed on StafPlan without his permission following his departure from employment. As evidenced by pretrial proceedings and the trial itself, the case was difficult both legally and factually. Many aspects of the case turned on the Court's subjective view of the expert testimony, the technical presentations, and Plaintiff's own testimony explaining certain inconsistencies between the technical evidence and his alleged time line of events. Although Plaintiff ultimately lost at trial, this does not render his case "objectively" unreasonable. *See Positively Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 382 n.23 (5th Cir. 2004) (noting that such a rule would remove the discretionary aspect of the fee award). *Cf. Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994) (fees mandated where district court made finding that action was a "defamation of a copyright case" that "should have never been brought").

As to Plaintiff's motivation for bringing the action, the record is devoid of evidence tending to show Plaintiff acted maliciously or in bad faith. As explained above, Plaintiff created the computer programs at issue and was seeking to defend his rights to such material. Plaintiff's case was largely predicated on evidence provided by Defendants, which was then tested by a qualified expert. The Court finds no bad faith motivation on the part of Plaintiff. *See Freed*, 30 F.3d at 506 (finding no evidence before the district court tending to show that losing party was acting maliciously or in bad faith); *Positive Black Talk, Inc.*, 394 F.3d at 382 ("Plaintiff had a renowned music expert to support its position even though the jury gave greater weight to the testimony of Defendant's expert. The Court is convinced that Plaintiff's claims were brought in good faith.").

B.     Considerations of Compensation and Deterrence

Based on Plaintiff's version of events, he was justified in filing the lawsuit, and the Court finds no reason to "deter" similar suits from being filed. Plaintiff contended that his former employers were stealing his original work and ideas for their own financial benefit. After years of hard-fought litigation, he lost at trial. However, this is not a case in which the consideration of deterrence of similar suits counsels in favor of an award of fees. *Cf. Freed*, 30 F.3d at 506 (finding that goal of deterring a party from pursuing frivolous litigation was served by imposition of fees).

With respect to Defendants' need for compensation, Defendants request approximately $2 million in fees. The Court observes that at least some of these fees were incurred due to Defendants' own changing legal theories and discovery tactics, which were sanctioned by this Court on two occasions. Further, Defendants could have faced a substantial judgment based on Defendants' own calculations of how much it benefited from use of Christal Ball. Defendants, therefore, had legitimate motivation to defend this lawsuit and to defend it vigorously. The Court finds that the

consideration of the "need for compensation" also does not weigh in favor of a fee award.

Finally, considering the overarching objective of the Copyright Act to encourage the production of original literary, artistic, and musical expression for the good of the public, the Court finds that awarding fees in this case would not promote that goal. It is undisputed that Plaintiff, and not Defendants, developed all relevant creative processes. The crucial fact in this case was that the copyrighted version of StafPlan was based in large part on Christal Ball, which Plaintiff developed as a work made for hire for Defendants. Defendants will continue to hire individuals to develop cost-saving software regardless of whether it is awarded fees in this case or not. Accordingly, based on all relevant considerations, the Court declines to award Defendants fees pursuant to 17 U.S.C. § 505.

### III.    Defendant's Motion for Costs

Unlike attorneys' fees, statutory costs are generally awarded "as of course to the prevailing party." *See* Fed. R. Civ. P. 54(d)(1); *see also* 28 U.S.C. § 1920 (listing items to be taxed as costs). The Court finds it appropriate, therefore, to award costs to Defendants pursuant to 17 U.S.C. § 505. *See Artisan Contractors Ass'n of America, Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1040 (11th Cir. 2001) (affirming district court's decision to deny attorneys' fees but award costs pursuant to 17 U.S.C. § 505; holding that same standards governing general cost awards under 28 U.S.C. § 1920 also govern costs awarded pursuant to 17 U.S.C. § 505). Based on the Bill of Costs submitted by Defendants on August 28, 2006, the Court finds that Defendants' proposed costs are statutorily authorized and that Defendants are entitled to costs in the total amount of $20,148.57.

### IV.    Conclusion

Plaintiff's Motion for Attorneys' Fees Incurred in Connection with Motion for Sanctions

(Doc. 271) is GRANTED in the amount of $45,836.25.  Defendants' Motions for Costs (Doc. 258) is GRANTED in the amount of $20,148.57.  The Court will offset these two amounts, such that a fee award is hereby entered in favor of Plaintiff in the total amount of $25,687.68.  This amount is to be paid by Defendants to Plaintiff's counsel as compensation for fees incurred.  Defendants' Motion for Attorneys' Fees (Doc. 259) is DENIED.

ORDERED this 20th day of June, 2007.

_____
**TERENCE KERN
UNITED STATES DISTRICT JUDGE**